UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **AESHA JASHWANTBHAI MAKWANA**<br>3232 Normandy Woods Drive, Apt C<br>Ellicott City, MD 21043<br><br>Plaintiff,<br><br>v.<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES,**<br>5900 Capital Gateway Drive<br>Mail Stop 2120<br>Camp Springs, MD 20588<br><br>**UR MENDOZA JADDOU, DIRECTOR,**<br>**U.S. Citizenship and Immigration Services**<br>5900 Capital Gateway Drive<br>Mail Stop 2120<br>Camp Springs, MD 20588<br><br>**MARY BETH BRENNAN SENG,**<br>**DIRECTOR, USCIS TEXAS SERVICE CENTER**<br>5900 Capital Gateway Drive<br>Mail Stop 2120<br>Camp Springs, MD 20588<br><br>**U.S. DEPARTMENT OF STATE**<br>600 19th Street NW, Suite 5.600<br>Washington, D.C. 20522<br><br>**ANTONY J. BLINKEN, SECRETARY OF STATE, U.S. DEPARTMENT OF STATE**<br>600 19th Street NW, Suite 5.600<br>Washington, D.C. 20522<br><br>Defendants. | Civil No.: |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNTIVE RELEIF UNDER THE APA AND FOR A WRIT OF MANDAMUS**

COMES NOW, Aesha Jashwantbhai Makwana ("Makwana" or "Plaintiff"), the derivate applicant of Sukhbir Singh ("Singh") a lawful Permanent Resident and the primary applicant of their I-485 adjustment of status, by and through its Counsel of Record, and files this Complaint for Declaratory and Injunctive Relief under the Administrative Procedure Act ("APA") and for a Writ of Mandamus, against the United States Citizenship and Immigration Services ("USCIS"). Ur Mendoza Jaddou, Director of USCIS ("Jaddou"), Mary Beth Brennan, Director of Texas Service Center ("Brennan"), U.S. Department of State ("DOS"), and Antony J. Blinken, Secretary of State, DOS ("Blinken") (collectively, "Defendants").

## JURISDICTION

1. Jurisdiction in this case is proper under 28 U.S.C. § 1331 (Federal Question Jurisdiction) and § 1361 (Mandamus). Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States."

2. This Court can also compel agency action that is unlawfully withheld, unreasonably delayed, or which is contrary to law, an abuse of discretion, or arbitrary and capricious. 5 U.S.C. §§ 555(b), 706.

3. Further, this Court has subject matter jurisdiction under the Mandamus statute, 28 U.S.C. § 1361, giving District Courts original jurisdiction over any action in mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to them. In this case, Defendants have failed and/or refused to adjudicate Form I-485 applications for Lawful Permanent Residency for Plaintiff in a timely and reasonable manner despite their clear, non-discretionary duty to do so, and there is no other adequate remedy available to Plaintiff.

4. This Court has authority to grant relief under the Mandamus Act (28 U.S.C. § 1361), the Declaratory Judgment Act (28 U.S.C. § 2201), and the Administrative Procedure Act (5 U.S.C. § 702).

5. There is no requirement to exhaust administrative remedies in this case.

## VENUE

6. Venue in this district is proper under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omission giving rise to Plaintiff's claims occurred in the Northern District of Texas.

## PARTIES

7. Plaintiff, Aesha Jashwantbhai Makwana, is a national of India, and currently resides in Maryland.

8. Defendant USCIS is the agency within the Department of Homeland Security ("DHS"), which is responsible for adjudicating immigration benefits, such as a Form I-485, Applications for Lawful Permanent Residency or Adjustment of Status ("I-485"). USCIS failed to timely adjudicate Plaintiff's I-485 application, which is the subject of this Complaint.

9. Defendant Ur Mendoza Jaddou, is sued in her official capacity as the Director of USCIS. In this position Ms. Jaddou is responsible for overseeing the adjudication of immigration benefits and establishing and implementing governing policies. Specifically, Ms. Jaddou oversees the USCIS Service Centers and Field Offices, providing services for persons seeking immigration benefits, as well as issuing decisions to individuals who have requested immigration benefits.

10. Defendant Mary Beth Brennan is sued in her official capacity as Director of USCIS Texas Service Center. Mary Beth Brennan is the officer responsible for timely adjudicating immigration benefits, such as Plaintiff's adjustment of status (I-485) application.

11. Defendant DOS is the agency responsible for the visa numbers allocation and

determining the number of visas available for family and employment-based applications within a fiscal year.

12. Defendant Antony J. Blinken is sued in his official capacity as the Secretary of State, DOS.

## STATUTORY BACKGROUND: IMMIGRANT PREFERENCE CATEGORIES, NUMERICAL LIMITS, AND ROLLOVER

13. Lawful permanent residency, colloquially known as a "green card," is the right to live and work in the United States indefinitely and is a pathway to citizenship. *See generally* 8 U.S.C. § 1101(a)(20). The Department of State ("DOS") can grant lawful permanent residency with an "immigrant visa" for individuals abroad, and the Department of Homeland Security ("DHS" through its agency US Citizenship and Immigration Services ("USCIS")), can grant lawful permanent residency via "adjustment of status" for individuals present in the United States. 8 U.S.C. §§ 1101(a)(16), 1255(a). This Complaint refers to both grants of residency as "visas" or "immigrant visas," because this is the terminology that DHS and DOS use when calculating annual limits on permanent residents.

14. The Immigration Act of 1990 amended the Immigration and Nationality Act to establish family-based, employment-based, and diversity categories for permanent residency applications. Pub. L. No. 101-649, 104 Stat. 4978. Within each of these categories, Congress established an annual ceiling for the number of visas or adjustments of status that can be accepted. Within the employment-based categories, there are 140,000 available "visas" at the start of each fiscal year in October. In addition, any unused "visa numbers" from the family-based categories from the prior fiscal year "roll-over" to the employment-based categories and create additional visas above and beyond the 140,000 maximum. 8 U.S.C. § 1151(c)(4)(d)(2). DOS and DHS are

mandated to annually issue the prescribed 140,000 employment-based visas, along with any "rolled over" visas from the family-based categories, within the fiscal year. Additionally, if there are "left over" numbers at the end of the year in the employment-based categories, these visas "roll back over" to the family-based categories for the following fiscal year. 8 U.S.C. § 1151(c)(3)(C). By implementing a roll-over and roll-back system for visas, Congress meant to maximize the usage of visas and ensure that no visas go to waste.

15. Plaintiff, as the "derivative" applicant is counted against these annual limits.[1]

16. Family-based visas are allocated differently. There is no numerical limitation for "immediate relatives" (spouses, minor children, and parents of adult U.S. citizens). 8 U.S.C. § 1151(b)(2)(A)(I). However, immediate relative visa allocation still counts against the overall family-based visa allocation. To calculate the maximum number of family-based visas for non-immediate relatives (such as the spouse of permanent residents and adult children of U.S. citizens), Congress established the following system: start with the number 480,000, subtract the number of immediate relative visas allocated the prior fiscal year, then add any unused employment-based numbers "rolled over" from the prior fiscal year. 8 U.S.C. § 1151(c)(1).

17. Because there are routinely more than 480,000 immediate relative visas issued each year (pre-pandemic), Congress also set a minimum of 226,000 family-based visas for non-immediate relative family-based cases (such as spouses and children of permanent residents). This ensures that some visas will still be available for these groups even if the prior fiscal year had a particularly high number of immediate relatives. 8 U.S.C. § 1151(c)(1)(B)(ii).

18. In practice, this has meant that there are always exactly 226,000 family-based non-immediate-relative visas available because the consistently high number of immediate relative

---

[1] *See, e.g.*, Wang v. Blinken, 3 F.4th 479 (D.C. Cir. July 9, 2021) (holding that family members of employment-based investor visa applicants are counted against the numerical limit for that category).

applications cancel out any visa numbers "rolled over" from the employment-based categories.

19. The Immigration Act of 1990 also created per-country limitations, mandating that no country's citizens can make up more than seven (7) percent of the total number of family-based or employment-based visas in a given fiscal year. 8 U.S.C. § 1152(a)(2).

20. As a result of this per country limit, those countries with particularly high numbers of applicants in either the family or employment-based categories are placed in a queue, creating a line or "backlog" before they can apply for permanent residency. Within the employment-based category, the backlog is singularly long for Indian applicants. The rollover numbers at issue in this case will directly affect the size of the backlog of Indian nationals. As employment-based visa numbers expire and go unused, rather than being diverted to the existing backlog, the visa backlog for Indian nationals grows. In 2018, a Cato Institute study projected that an Indian applicant with a bachelor's degree would wait an estimated **54 years** after her employer petitions for her before she is eligible to apply for permanent residency under the employment based third preference category.[2] These wait times are so dramatic that Cato estimated that thousands of immigrants will drop out of line by dying before they become eligible to apply for residency, reducing the projected wait time to 49 years.[3] Under the current implementation of the rollover system, it is plausible that an employer could now wait decades for a petitioned employee, only to have that employee retire (or even die) before finally becoming eligible for a green card. This was not the intended result of the rollover system.[4] When Congress established the rollover system in 1990, the object was to improve wait times and reduce backlog in the immigration process. Indeed, if USCIS implements the system as Congress intended, it would significantly reduce the existing

---

[2] David J. Bier, *Policy Analysis: Immigration Wait Times from Quotas Have Doubled*, 873 CATO INST. 1, 11 (June 18, 2019)  http://www.cato.org/sites/cato.org/files/pubs/pdf/pa-873-updated.pdf. (emphasis added).
[3] *Id*.
[4] *Id*.

backlog by allocating "rolled over" numbers to backlogged applicants.

21.  The rollover process between the family-based and employment-based visa allocations is designed to benefit both categories of intending immigrants, as well as to reduce the hardship for people from countries with larger immigrant populations. In creating the rollover system, Congress intended to allow both family-based and employment-based categories to maximize the use of the prescribed numbers by allowing them to roll back-and-forth until they have all been used, avoiding visa wastage, and reducing backlogs to the extent possible. As confirmation of this intent, Congress specifically exempted "rolled over" numbers from the employment-based per-country numerical limits, so that they could be used to reduce backlogs.[5]

22.  Unfortunately, the rollover system was created in 1990 and, due to the increased number of immediate relative applications and increased number of employment-based applicants in the backlog over time, the formula has become less effective in utilizing unused employment-based numbers.[6]

23.  The number of immediate relative petitions has increased since the rollover system was instituted.[7] Between 2002 and 2018, the increase in immediate relative petitions has caused the demand for family-based visa numbers to historically reach the statutory minimum of 226,000. The employment-based categories have subsequently lost the benefit of rolled-over visa numbers because of the family-based category consistently defaulting to the base of 226,000 visas.[8]

24.  The family and employment-based immigrant visa categories are not the only examples of such numerical systems for visas within US immigration law. The H-1B visa for high-skilled workers in specialty occupations also has an annual limit of 85,000 visas,

---

[5] 8 U.S.C. § 1152(a)(5)(A).
[6] *See* Bier, *supra* note 3.
[7] Andrew J. Pincus, *Memo to the Federation of American Scientist,* appendix (May 26, 2021). Ex. A.
[8] William A. Kandel, Cong. Research Serv., R43145, U.S. Family-Based Immigration Policy 4 (2018).

representing "the total number of aliens who may be issued visas or otherwise provided nonimmigrant status during any fiscal year."[9]

25. In the employment (and family) based immigrant visa allocations, USCIS only allocates a visa as "used" at the time the application is adjudicated and approved.[10] Using the same language but reaching a different result, USCIS reserves each H-1B visa at the time an employer files an H-1B petition with USCIS.[11] By allocating the visa at the point of filing, USCIS permits an H-1B petition to remain approvable even if the processing time results in the petition not being adjudicated within the fiscal year when it was filed.[12] By allocating employment and family-based visa numbers only at the time of final adjudication and approval, USCIS increases the green card backlogs that Congress intended to ameliorate with the Immigration Act of 1990.

## FACTUAL ALLEGATIONS

26. The Department of State estimates that there will be approximately 197,000 employment-based visas available in Fiscal Year ("FY") 2023, due to approximately 57,000 family-based visas having gone unused in FY 2022.[13]

27. In September 2020, the DOS calculated that there would be a large "roll over" of employment-based visas, due to the fact COVID-19 prohibited USCIS from adjudicating many family-based visas. This predicted "roll-over" allowed the visa priority dates for certain Indian employment-based immigrants to progress rapidly and beginning in October of 2020, thousands of Indian nationals became eligible to file employment-based green card applications.[14] U.S.

---

[9] 8 U.S.C. § 1184(g)(1); 8 USC §1184(g)(5)(C).
[10] *Chapter 6 – Adjudicative Review*, USCIS, https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6 (Mar. 10, 2023).
[11] Registration Requirement for Petitioners Seeking to File H-1B Petitions on Behalf of Cap-Subject Aliens, 83 Fed. Reg. 62406, 62412 (Dec. 3, 2018).
[12] *See Chapter 6 – Adjudicative Review*, USCIS, https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6 (Mar. 10, 2023).
[13] *Fiscal Year 2023 Employment-Based Adjustment of Status FAQs*, USCIS, https://www.uscis.gov/green-card/green-card-processes-and-procedures/fiscal-year-2023-employment-based-adjustment-of-status-faqs (Nov. 17, 2022).
[14] U.S. Dep't of State, Bureau of Consular Affs., Visa Bulletin, 3 (Sept. 2020).

employers had previously filed visa petitions for these workers, and had approval notices for these foreign workers dating back as early as 2009 (for certain Indian nationals).[15] The advancing priority dates in the Visa Bulletin also meant that some Indian nationals, who were able to file for adjustment of status many years before, but whose cases were not adjudicated, finally had hope that USCIS would finally issue their green cards. Unfortunately, Defendants failed to timely adjudicate these visa petitions, and thousands of visas went to waste. Since that time, the employment-based visa category has seen an increase in the visas available due to the family-based visas going unused, again due to COVID-19. The increase in employment-based visas has slowly declined over the past three (3) years, as the world has started to return to its "normal" operations. The increase in employment-based visas provided the Defendants with a unique opportunity to finally clear the backlog that has prevented so many Indian employment-based immigrants from obtaining their visas. Nonetheless, year after year, visas have continued to go to waste, and the backlog has continued to increase. Defendants still have a chance to ensure the additional 57,000 employment-based visas from the "roll-over" do not go unused, like in years past. Plaintiff is among the Indian nationals who are now eligible to file for adjustment of status.

28. Plaintiff Makwana has a Priority Date of December 23, 2009 based on her husband's I-140. When the November 2019 Visa Bulletin was announced by DOS, Singh promptly filed their I-485's. On November 22, 2019, Singh and Plaintiff both received a receipt number for their I-485 applications (Makwana's receipt number: MSC2090350310).

29. Singh and Makwana had collectively waited for twelve (12) years to adjust their status. In December of 2021, Singh received his I-485 approval and Permanent Resident card. Much to their surprise, Makwana's case status was unchanged, and she has now waited an

---

[15] *Id.*

additional sixteen (16) months. As the end of FY 2022 approached and Defendants failed to adjudicate Plaintiff's application, Makwana's hopes dissipated. Singh and Makwana have taken every possible action to expedite the adjudication of Makwana's application, including raising service requests, contacting USCIS, and contacting their government representatives. We are now in FY 2023, and as of the date of this Lawsuit, Plaintiff's application is still pending.

30. Defendants' failure to timely adjudicate Plaintiff's applications has, and will continue to, cause irreparable harm. Specifically, as mentioned in Plaintiff's Unsworn Declaration, due to the unjust delay of their I-485 applications the Plaintiff has limited career prospects, and limited ability to travel to her home country of India, amongst other harm.[16]

31. Even more so, since the date of the filing of this lawsuit, the Department of State has published the April Visa Bulletin ("AVB"), which went into effect starting April 1, 2023.[17] The AVB published a "Final Action Date," applicable to Plaintiff, of June 15, 2012. Effective April 1, 2023, Plaintiff is still eligible for their green card. However, Plaintiff fears that a retrogression is near, and her priority date will no longer be current. In fact, the retrogression has already severely impacted the EB-2 category. In October of 2022, the EB-2 category retrogressed by more than two (2) years, from December 1, 2014, to May 1, 2012. In April of 2023, the EB-2 category retrogressed again by ten (10) months from October 8, 2011 to January 1, 2011.

32. USCIS is currently processing Plaintiff's application at its Baltimore Field Office. A USCIS report relating to the median processing time for employment-based green card applications at the Baltimore Field Office is approximately 25.5 months. Plaintiff's application

---

[16] Exhibit "A", Unsworn Declaration of Aesha Makwana.
[17] U.S. Dep't of State, Bureau of Consular Affs., Visa Bulletin (April 2023), https://travel.state.gov/content/dam/visas/Bulletins/visabulletin_April2023.pdf.

has now been processing for 41 months, almost double the median processing time.

33. These lengthy and wildly divergent processing times are part of a trend that predates the COVID-19 pandemic challenges. Although the underlying law and procedure have not changed, delays for employment-based green card applications have increased dramatically in recent years. The agency took approximately 10.6 months in FY 2018, 10.0 months in FY 2019, 8.8 months in FY 2020, 9.9 months in FY 2021, 11.0 months in FY 2022, and 10.1 months in FY 2023.[18]

34. The numeric system for green card applications is considered by USCIS both at the time of filing to ensure the time of filing it can be accepted for processing and again at the time of adjudication to make sure a visa number is available for approval. If a visa number is not available, the application is held in abeyance until a number becomes available, sometimes many years in the future.[19] It seems counterproductive for USCIS to consider the number of visas' available at the time of filing, thereby accepting the filing and processing the application, to possibly have to hold the application in abeyance at the time of adjudication, because the visa allocation for the requisite category has been met.

35. Despite mirroring statutory language, USCIS policy counts visa numbers differently in different contexts.[20] For green card applications, the USCIS counts a visa number at the time of the application's final adjudication. For nonimmigrant H-1B visa petitions, USCIS counts the visa number as used on the date that the petition is filed and reserves the visa number even if the petition is approved in the current or following fiscal year. Employers file H-1B

---

[18] *Historical National Average Processing Time (in Months) for all USCIS Offices for Select Forms by Fiscal Year*, USCIS, https://www.uscis.gov/archive/historical-national-average- processing-time-in-months-for-all-uscis-offices-for-select-forms-by.
[19] *Chapter 6 – Adjudicative Review*, USCIS, https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6 (Mar. 10, 2023).
[20] *See* Pincus, *supra* note 7.

petitions prior to the start of the fiscal year, and USCIS "reserves" their numbers at the time of application for the following year.

36. USCIS's unexplained inconsistency prejudices family and employment-based green card applicants by causing unnecessary waste of Congressionally mandated visa numbers, and exacerbates the green card backlogs. This arbitrary and capricious interpretation especially hurts employment-based applicants from India, including the Plaintiff in this lawsuit.

### TRAC Factors

37. The Administrative Procedure Act ("APA") requires that an agency concludes a matter presented to it "within a reasonable time." 5 U.S.C. § 555(b). To determine what constitutes a reasonable time, courts look to the following factors laid out in *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984):

(1) whether the time an agency takes to render a decision is governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to act, then the enabling statute and statutory scheme may supply content for this rule of reason;

(3) delays in the realm of economic regulation are less tolerable when human health and welfare are at stake;

(4) consideration of the effect of expediting delayed action on agency actions of higher or competing priority;

(5) the nature and extent of the interests prejudiced by delay; and

(6) the impropriety of agency lassitude is not required to find that agency action has been unreasonably delayed.

38. An analysis of the TRAC factors demonstrates that Defendants have grossly and

unreasonably delayed adjudicating Plaintiff's applications for permanent residency.

39. The rule of reason suggests that USCIS's processing of employment-based adjustment of status applications, according to its published timelines, constitutes an unreasonable delay. Current processing times have resulted in a loss of thousands of visas, which should have allocated to be processed within FY 2022 according to the rules established by Congress in the Immigration Act of 1990, and will cause Plaintiff to wait not months, but possibly years or decades longer until they become eligible for residency again. It is unreasonable that the agency made no plan to timely process these applications when DHS had ample warning of the increased number of applications for FY 2022 and knew that these visas had to be adjudicated by the end of the fiscal year or be completely wasted. We are now in FY 2023, and again, thousands of visas are predicted to go to waste due to the Defendants unjust and unlawful delay. Nonetheless, Defendants happily accepted the millions of dollars in legal fees for the I-485s, ***knowing*** full well that the agency did not have the resources or capacity to adjudicate the thousands of applications received by September 30. The fact Defendants accepted the filing fees, with this knowledge, is both egregious and unjust.

40. Congress has made ***clear*** that it expects USCIS to adjudicate applications for permanent residency expeditiously. The Immigration and Nationality Act specifies that immigration benefit applications should be ***adjudicated within 180 days.*** 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application")(emphasis added).

41. Because Congress created time limitations and numerical limitations for visa availability, it presumably anticipated that agencies would endeavor to adjudicate applications within each fiscal year such that allocated numbers would not simply disappear.

42. Plaintiff's case has been pending with USCIS far beyond the anticipated 180- day processing time. USCIS data suggests they had no plan or intention to adjudicate them by September 30, 2023. Even considering the logistical challenges faced by the agency considering the COVID-19 pandemic – during which USCIS has continued to process cases – the agency's processing times for these cases are unreasonable. Defendants will undoubtedly argue that no unreasonable delay exists, as USCIS has a first-in/first-out ("FIFO") basis policy, and that Plaintiff has not yet reached the front of the line. However, this FIFO policy has either not been implemented by USCIS, contrary to their assertions, and/or the policy has been completely disregarded by USCIS, again, contrary to their assertions.

43. Plaintiff Aesha Jashwantbhai Makwana is a Business Analyst in Texas, Plaintiff is limited in her job prospects (that she is amply qualified for) or for positions that include requirements like higher security clearance, permanent residency, or citizenship.

44. Plaintiff faces hardship in her ability to work and travel as her EAD and Advance Parole are expiring in the coming months. As Employment Authorization and Advance Parole documents can only be approved in two-year increments, Plaintiff will have to re-file both her EAD and Advance Parole applications every two years if they want to remain in the U.S. and continue to work. The processing time for an Application for Advance Parole is currently between 7 to 16.5 months, while the current processing time for an EAD based on a pending I-485 is between 10 and 21.5 months. Thus, every two years Plaintiff is faced with the consequences of the long wait times associated with the expiration and renewal of their EAD and Advance Parole. Plaintiff's family is limited in their travel prospects as the are continuously dependent on Plaintiff's Advance Parole approval.

45. Any burden that the Defendants face by adjudicating Plaintiff's permanent residency applications is de minimus, and no higher or competing priority outweighs the harms that Plaintiff faces. Congress has made clear, by the implementation of the H-1B and "roll-back" process, that these noncitizens, who contribute so much to the workforce in the United States, are important to our economy. The United States benefits from their service, yet so nonchalantly (and without any regard to these noncitizens livelihood), allows the future of their lives, families, jobs, etc. to stay in limbo. Plaintiff timely filed this lawsuit, and are entitled to, at the very least, proper due process of the matter.

## RESERVATION OF RIGHTS

46. Plaintiff reserves the right to add additional allegations of agency error and related causes of action upon receiving the certified administrative record.

## CLAIMS FOR RELIEF
## FIRST CAUSE OF ACTION
### (Unreasonable Delay)

47. The APA requires administrative agencies to conclude matters presented to the agency for decision "within a reasonable time." 5 U.S.C. § 555(b).

48. The "agency action" covered by the APA includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent to denial thereof, or *failure* to act." 5 U.S.C. § 551(13) (emphasis added).

49. The APA explicitly provides a right of judicial review to a person "adversely affected or aggrieved" by an agency's "fail[ure] to act" or other agency action. 5 U.S.C. § 702.

50. Accordingly, when a proper showing is made, the reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

51. Congress has declared that "the processing of an immigration benefit application should be completed ***no later than 180 days*** after the initial filing of the application[.]" 8 U.S.C.

§ 1571(b)(emphasis added).

52. Defendants owe Plaintiff a duty to adjudicate her application for lawful permanent residency and have unreasonably failed or refused to perform that duty.

53. Despite having ample notice that they would receive a high number, yet again, of green card applications at the beginning of FY 2022 and FY 2023, Defendants have (again) made no plan to promptly adjudicate them, and instead have willfully and unreasonably delayed the adjudication of Plaintiff's application, forcing Plaintiff to endure a long and uncertain wait, resulting in an uncertain future for Plaintiff and her family. Defendants have a unique opportunity with the "roll-over" of visas from the family-based visa category to reduce the backlog for Indian nationals in the employment-based category. Nonetheless, Defendants have failed to take timely action each year (since the first unusually high number of employment-based visas were available in 2021). Rather, year after year, visas are going to waste; visas that, if timely adjudicated, could help reduce the backlog.

54. Defendants will undoubtedly argue that they have a strict FIFO policy. However, as outlined above, it is clear that this policy either does not exist, or USCIS completely disregards the policy.

55. Defendants have willfully and unreasonably delayed the adjudication of Plaintiff's application and have failed to use all available visa numbers, if it does not promptly adjudicate these applications. Since the Defendants did not adjudicate Plaintiff's green card applications by September 30, 2022, Plaintiff will likely have to wait many more years until she becomes eligible again, and their congressionally allocated visa numbers will be wasted, which is completely adverse from Congress' intent.

56. Plaintiff has a right to have her application for lawful permanent residency

adjudicated, and she has no other adequate legal remedy available to her. Defendants' continued delay has deprived Plaintiff of the many privileges that accompany the approval of her lawful permanent residency, including the right to work for any employer, the right to travel freely and return to the United States, and most importantly, a pathway to apply for US citizenship.   59. Defendants can still cure the harm caused by applying the same meaning to the phrase "visa being used" as they do to H-1B visas. This would allow the Defendants to continue processing Plaintiff's visas, despite any retrogression, because the visa number would in essence be considered reserved.[21]

57. Alternatively, the Court can still cure the harm, caused by Defendants. Plaintiff timely filed this lawsuit, well before the end of FY 2023, the claim they have over the "roll-over" visas still exist. Moreover, the Court has the power to reserve those visas, beyond their expiration, for Plaintiff.[22]

58. Accordingly, Plaintiff requests that this Court compel Defendants to adjudicate Plaintiff's I-485.

## SECOND CAUSE OF ACTION
**(Arbitrary and Capricious Actions in Violation of the Administrative Procedure Act (5 U.S.C. § 706(2)(A))**

59. Plaintiff re-alleges and incorporate by reference each of the foregoing paragraphs.

60. "The reviewing court shall. . . hold unlawful and set aside agency action. . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Court may further review and set aside final agency action in excess of statutory jurisdiction, authority, or limitations. . . or without observance of procedure required by

---

[21] *Part H-Specialty Occupation Workers (H-1B, E-3)*, USCIS, https://www.uscis.gov/policy-manual/volume-2-part-h (last visited Oct. 20, 2021).
[22] Parcharne v. DHS, No. 1:21-CV-115-SA-DAS, 2021 WL 4497491 (N.D. Miss. Sept. 30, 2021); *see also* Basnova v. Ashcroft, 373 F. Supp. 2d 192, 198 (E.D.N.Y 2005).

law. 5 U.S.C. §§ 706(2)(C)-(D).

61. The agency-delayed processing of Plaintiff's application is arbitrary and capricious and abuses agency discretion. The unreasonably long processing times for the employment-based applications for permanent residency are not justified by the time necessary to adjudicate those applications.

62. Accordingly, Plaintiff requests that the Court compel Defendants to adjudicate both of their I-485s.

### THIRD CAUSE OF ACTION
### (Writ of Mandamus Act (28 U.S.C. § 1361))

63. Plaintiff re-alleges and incorporate by reference each of the foregoing paragraphs.

64. Plaintiff seeks a writ of mandamus to compel Defendants "to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

65. Defendants have a nondiscretionary, mandatory duty to adjudicate Plaintiff's permanent residency application within a "reasonable time."

66. Defendants have unlawfully and unreasonably delayed and withheld the adjudication of Plaintiff's application despite having all information and supporting documents necessary to do so.

67. Therefore, Plaintiff seeks an order compelling Defendants to adjudicate Plaintiff's permanent residency application without further delay, before September 30, 2023.

### FOURTH CAUSE OF ACTION
### (Agency Action Unlawfully Withheld in Violation of the Administrative Procedures Act (5 U.S.C. § 555(b); 5 U.S.C. § 706(1))

68. Plaintiff repeats and reallege the averments in all preceding paragraphs of this complaint.

69. DHS has withheld action on Plaintiff's case without authority to do so, thereby

causing, and continuing to cause, Plaintiff irreparable harm.

## FIFTH CAUSE OF ACTION
**(Arbitrary and Capricious Actions in Violation of the Administrative Procedure Act (5 U.S.C. § 706(2)(A))**

70. Pursuant to 5 U.S.C. § 701(b)(1), United States Citizenship and Immigration Services is subject to the Administrative Procedure Act ("APA").

71. "The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Court may further review and set aside final agency action in excess of statutory jurisdiction, authority, or limitations . . . or without observance of procedure required by law. 5 U.S.C. § 706(2)(C)-(D).

72. USCIS's inconsistent application of the numerical systems between the H-1B lottery system and the green card system when statutory language mirrors one another is unjustifiable.

73. This court should order USCIS to reserve green card numbers at the time an application is filed like the system USCIS utilizes for the H-1B lottery process, and this should be effective retroactively, as Plaintiff's timely filed this lawsuit, and have not had the proper due process to argue their claim.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Issue a Writ of Mandamus compelling Defendants to adjudicate Plaintiff's I-485 application for lawful permanent residency before September 30, 2023;

(3) Order any other relief that may be equitably necessary, such as ordering USCIS to "hold" extra employment-based visa numbers beyond FY 2023, to allow adjudication of Plaintiff's application in FY 2024;

(4) Order Defendants to stay the effective date of the 2023 April Visa Bulletin, until the adjudication of this lawsuit;

(5) Award Plaintiff costs of suit and reasonable attorney's fees under the EqualAccess to Justice Act, 42 U.S.C. § 1988, and any other applicable law;

(6) Enter all necessary writs, injunctions, and orders as justice and equity require; and

(7) Grant such further relief as this Court deems just and proper.

Respectfully submitted this 4th day of May, 2023.

Respectfully submitted,

*/s/ Caitlin Rowe*
Caitlin Rowe
State Bar No. 24124334
Sharadha Sankararaman Kodem
State Bar No. 24090370
Kodem Law Firm, PLLC
150 W John Carpenter Freeway Suite 130
Irving, Texas 75039
Phone: 888-955-6634 ext. 101
Facsimile: 817-778-9980
Email: sharadha.kodem@kodemlaw.com
Email: caitlin.rowe@kodemlaw.com

COUNSEL FOR PLAINTIFF